**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | CASE No. | 22-50693 (JAM) |
| VALUEX RESEARCH, LLC | ) | | |
| | ) | CHAPTER | 7 |
| Putative Debtor. | ) | | |
| | ) | RE: ECF No. | 16 |

<u>**APPEARANCES**</u>

Mr. Eric Ross
1450 Washington Boulevard, 1602S
Stamford, CT 06902

*Pro Se Petitioning Creditor*

Joseph J. D'Agostino, Jr.
1062 Barnes Road, Suite 108
Wallingford, CT 06492

*Counsel for Petitioning Creditors Francine Ross, Justin Ross, Carrie Kendall (Ross), Landy Properties, LLC, The Ross Trust, Arthur Blick, and Lauren Blick*

John F. Carberry
Cummings & Lockwood
Six Landmark Square
Stamford, CT 06901

*Counsel for Putative Debtor Valuex Research, LLC*

**MEMORANDUM OF DECISION AND ORDER GRANTING**
<u>**MOTION TO DISMISS INVOLUNTARY PETITION AFTER TRIAL**</u>

Julie A. Manning, United States Bankruptcy Judge

**I.      <u>INTRODUCTION</u>**

Before the Court is a Motion to Dismiss an involuntary petition (the "Motion to

Dismiss," ECF No. 16) filed by petitioning creditors against Valuex Research, LLC ("Valuex

Research").  The Motion to Dismiss asserts that the involuntary petition (the "Involuntary

Petition," ECF No. 1) was filed against Valuex Research in bad faith and seeks dismissal under 11 U.S.C. § 303.  For the reasons stated below, the Motion to Dismiss is **GRANTED** pursuant to 11 U.S.C. § 707(a).

## II.   <u>BACKGROUND</u>

On December 27, 2022, Mr. Eric Ross, Ms. Francine Ross, Mr. Justin Ross, Ms. Carrie Kendall (Ross), Landy Properties LLC, the Ross Trust, Mr. Arthur Blick, and Ms. Lauren Blick commenced this involuntary Chapter 7 case against Valuex Research.  In addition to Valuex Research, the Involuntary Petition lists three other entities as aliases of Valuex Research: Valuex Fintech LLC, Valuex LLC, and Valuex Inc.  (ECF No. 1., at p. 1.)

On January 23, 2023, the Court entered an Order to Appear and Show Cause why the Involuntary Petition should not be dismissed for failure to demonstrate that the Amended Involuntary Summons (ECF No. 3) was properly served on Valuex Research (the "Order to Appear and Show Cause," ECF No. 7).  The Order to Appear and Show Cause also ordered all of the petitioning creditors to appear at the Show Cause hearing scheduled to be held on January 31, 2023.  Mr. Eric Ross appeared at the Show Cause hearing, but none of the other seven petitioning creditors appeared.

Following the Show Cause hearing, the Clerk's Office received a document entitled Certificate of Service signed by Mr. Charles Sutter regarding service of the Involuntary Petition on Valuex Research.  (ECF No. 11.)  On February 23, 2023, Attorney John F. Carberry ("Attorney Carberry") filed a Notice of Appearance on behalf of Valuex Research (ECF No. 12) and filed a Motion to Extend Time to Respond to Involuntary Petition (ECF No. 13), which the Court granted (ECF No. 14).

On March 27, 2023, Valuex Research filed the Motion to Dismiss.  On April 24, 2023, Mr. Eric Ross filed an objection to the Motion to Dismiss on behalf of all the petitioning creditors.  (The "Ross Objection," ECF No. 20.)  Shortly thereafter, on April 28, 2023, Attorney Joseph J. D'Agostino, Jr. ("Attorney D'Agostino") filed a Notice of Appearance on behalf of seven (7) of the petitioning creditors—Ms. Francine Ross, Mr. Justin Ross, Ms. Carrie Kendall (Ross), Landy Properties LLC, the Ross Trust, and Mr. Arthur Blick (collectively, the "Investor Group"), and Ms. Lauren Blick.  Although the Ross Objection was filed on behalf of all the petitioning creditors, on May 31, 2023, Attorney D'Agostino filed a separate objection to the Motion to Dismiss on behalf of the Investor Group and Ms. Lauren Blick (ECF No. 35).  No attorney has filed an appearance on behalf of Mr. Eric Ross (hereinafter, "Mr. Ross") and he has proceeded *pro se* since filing the Involuntary Petition.

On May 2, 2023, an initial hearing was held on the Motion to Dismiss.  Attorney Carberry, Attorney D'Agostino, and Mr. Ross appeared at the hearing.  During the hearing, the Court ordered a trial to be held on the Motion to Dismiss.

The trial on Motion to Dismiss was commenced and concluded on August 16, 2023.  During the trial, Attorney Carberry called Mr. Ross and Ms. Ulrika Johansson ("Ms. Johansson") as witnesses.  Attorney D'Agostino cross-examined both witnesses, and Mr. Ross was allowed to cross-examine Ms. Johansson.  Aside from Mr. Ross, none of the other petitioning creditors appeared at or testified during the trial.  In addition to testimony, Attorney Carberry, Attorney D'Agostino, and Mr. Ross admitted thirty-nine (39) exhibits into evidence.[1]

---

[1]  On August 23, 2023, Mr. Ross filed an Amended Involuntary Petition (ECF No. 53).  On August 28, 2023, Attorney D'Agostino filed a Motion to Extend Time to Cure Deficiency (ECF No. 57).  On August 31, 2023, Attorney D'Agostino filed a separate Amended Involuntary Petition (ECF No. 59).  These documents were filed after the close of evidence at the conclusion of trial and will therefore not be considered by the Court.

III.     **JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are statutorily core proceedings.  28 U.S.C. § 157(b)(2)(A).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

IV.     **FINDINGS OF FACT**

Pursuant to Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052, the following are the Court's findings of fact with respect to the Motion to Dismiss:

**The Involuntary Petition**

1.  On December 27, 2022, the Involuntary Petition was filed by Mr. Ross.  In addition to Mr. Ross, Ms. Francine Ross, Mr. Justin Ross, Ms. Carrie Kendall (Ross), Landy Properties LLC, the Ross Trust, Mr. Arthur Blick, and Ms. Lauren Blick are listed as the petitioning creditors on the Involuntary Petition.  (ECF No. 1.)

2.  Mr. Ross is the only petitioning creditor who personally signed the Involuntary Petition.  (ECF No. 52, at 11:03:09–11:03:23 a.m.)[2]

3.  All of the handwriting on the Involuntary Petition is Mr. Ross's handwriting.  The handwritten signatures of all the petitioning creditors, including his own, were signed by Mr. Ross in his handwriting.  (ECF No. 52, at 10:53:03–11:02:39 a.m.)

4.  Mr. Ross signed the Involuntary Petition on behalf of Landy Properties LLC and Mr. Bruce Ross, as trustee, of The Ross Trust.  (ECF No. 52, at 10:51:02–10:51:09 a.m., 10:55:43–

---

[2] ECF No. 52 is the audio recording of the trial held on August 16, 2023.

11:04:44.)  Mr. Ross is not a managing member of Landy Properties, LLC or a trustee of the Ross Trust.  (ECF No. 52, at 10:58:17–10:59:05 a.m.)

5.  Mr. Ross signed the Involuntary Petition on behalf of his children, Mr. Justin Ross and Ms. Carrie Kendall (Ross).  Mr. Ross received authorization to sign the Involuntary Petition their behalf, but did not testify when he received such authorization.  (ECF No. 52, at 11:00:53–11:02:39 a.m.)

6.  Ms. Lauren Blick is listed as one of the petitioning creditors.  Attorney D'Agostino subsequently filed an appearance on her behalf.  (ECF No. 28.)  However, Ms. Blick is not a creditor of Valuex Research and listing her as a petitioning creditor on the Involuntary Petition was an error.  (ECF No. 52, at 10:59:53–11:00:44 a.m.)

7.  Mr. Ross knew at the time he filed the Involuntary Petition that Valuex Research had at least two other investors, Mr. Mark Fisher ("Mr. Fisher") and another investor in Sweden.  (ECF No. 52, at 12:34:34–12:34:52 p.m.)  Mr. Ross knows Mr. Fisher personally.  (ECF No. 52, at 11:23:09–11:23:28 a.m.)

8.  Ms. Johansson told Mr. Ross that Mr. Fisher, on behalf of an entity known as Monroe Capital Holdings, LLC, filed a lawsuit against Valuex Research in the Connecticut Superior Court to collect amounts due on a convertible promissory note executed in favor of Valuex Research.  (ECF No. 52 at 1:16:13–1:16:20 p.m., 2:40:45–2:41:37 p.m.)  *See Monroe Cap. Holdings, LLC v. Valuex Rsch., LLC*, FST-CV-21-6053569-S (Conn. Super. Ct. Apr. 13, 2023).  Mr. Ross knew that the state court lawsuit was pending against Valuex Research as of August 30, 2022, months before he filed the Involuntary Petition.  (ECF No. 52, at 1:16:13–1:16:20 p.m.)

9.  On December 3, 2022, Mr. Ross asked to examine the books of Valuex Research, but did not receive a response to his request.  (ECF No. 52, at 1:08:10–1:08:16 p.m.)

10.  Mr. Ross would not have filed the Involuntary Petition if Ms. Johansson had agreed to his demands, even though he had accused Valuex Research of operating a Ponzi scheme and of defrauding people.  (ECF No. 52, at 1:34:35–1:35:40 p.m.)

### Valuex Research and other Valuex entities

11.  Mr. Ross reviewed the Connecticut Secretary of State website with regard to Valuex Fintech LLC, Valuex LLC, and Valuex Inc., before filing the Involuntary Petition.  (ECF No. 52, at 11:20:17–11:20:36 a.m.)  Mr. Ross named the three additional entities on the Involuntary Petition as aliases of Valuex Research, and for a period of time, they were named as involuntary debtors along with Valuex Research.

12.  Valuex Research is a Connecticut Limited Liability Company which was formed on May 9, 2016, and was dissolved on February 1, 2023.  (Stipulation of Facts ¶¶ 1 and 2.)  Ms. Johansson is the CEO and managing member of Valuex Research.  (Valuex Research Exs. 7 and 8.)

13.  Valuex LLC was a Connecticut Limited Liability Company which was formed on November 17, 2011, and was dissolved on February 2, 2012.  (Stipulation of Facts ¶¶ 3 and 4.)  Ms. Johansson and Mr. Peter Johansson are the members/managers of Valuex LLC.  (Valuex Research Exs. 4 and 5.)

14.  Valuex, Inc. is a Connecticut corporation which was formed on February 2, 2012, and is currently an active corporation.  (Stipulation of Facts ¶¶ 5 and 6.) Ms. Johansson and Mr. Peter Johansson are the incorporators of Valuex, Inc. (Valuex Research Ex. 6.)

15.  Valuex Fintech, LLC is a Connecticut Limited Liability Corporation which was formed on November 29, 2021, and is currently an active Limited Liability Corporation. (Stipulation of Facts ¶¶ 7 and 8.)  Mr. Peter Johansson is the only managing member of Valuex Fintech, LLC.  (Valuex Research Ex. 9.)

16.  Valuex Research has thirty-eight (38) creditors with an aggregate debt of approximately $500,000.00.  (ECF No. 52, at 2:26:50–2:27:09 p.m.)

17.  The VX1000 is a large cap fair value weighted index (hereinafter the "Index"), which was developed in Sweden and first used in 2007.  (ECF No. 52, at 2:13:24–2:13:57 p.m.)

18.  The business purpose of Valuex Research was to research, market, and license the Index in the United States and in Sweden.  (ECF No. 52, at 2:18:12–2:18:39 p.m.)

19.  The business purpose of Valuex Fintech, LLC is to market the Index in Europe, excluding Sweden.  (ECF No. 52, at 2:57:25–2:57:38 p.m.)

20.  The assets of Valuex Research include licenses that are separate from those owned by Valuex Fintech, LLC.  Valuex Research has never transferred any assets or money to Valuex Fintech, LLC.  (ECF No. 52, at 2:57:39–2:57:56 p.m.)

**The named petitioning creditors and their investment in Valuex Research**

21.  Mr. Ross is a certified professional accountant (CPA) in both New York and Connecticut (ECF No. 52, at 10:51:02–10:51:09), with forensic accounting experience (ECF No. 52, at 12:37:17–12:38:00 p.m.).  Mr. Ross is not an attorney.  (ECF No. 52, at 11:03:04–11:03:08 a.m.)

22.  Mr. Ross and Ms. Johansson met in August 2017, and were social acquaintances before Mr. Ross, his family, and his friends invested in Valuex Research.  (ECF No. 52, at 2:21:24–2:30:29 p.m.)

23. On November 10, 2017, Valuex Research entered into a convertible promissory note (CPN) with Mr. Ross and Ms. Francine Ross for $7,500.00 and Valuex Research received those funds. (Stipulation of Facts at ¶ 10.)

24. On November 10, 2017, Valuex Research entered into a CPN with Carrie Kendall (Ross) for $3,000 and Valuex Research received those funds. (Stipulation of Facts ¶ 9.)

25. On November 10, 2017, Valuex Research entered into a CPN with Justin Ross for $15,000.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 11.)

26. On November 10, 2017, Valuex Research entered into a CPN with Landy Properties, LLC for $7,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 12.)

27. On December 11, 2017, Valuex Research entered into a CPN with The Ross Trust for $7,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 13.)

28. On December 21, 2017, Valuex Research entered into a CPN with Arthur Blick for $7,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 14.)

29. On July 12, 2018, Valuex Research entered into a CPN with Mr. Ross and Ms. Francine Ross for $2,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 15.)

30. On July 12, 2018, Valuex Research entered into a CPN with Landy Properties for $2,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 16.)

31. On July 17, 2018, Valuex Research entered into a CPN with the Ross Trust for $2,500.00 and Valuex Research received those funds. (Stipulation of Facts ¶ 17.)

32. Each CPN entered into by and between Valuex Research and a petitioning creditor contained a clause titled "Representations and Warranties of Investor," which states, among other things, "Investor has such knowledge and experience in financial and business matters that

8

Investor is capable of evaluating the merits and risks of such investment, is able to incur a

complete loss of such investment without impairing Investor financial condition and is able to

bear the economic risk of such investment for an indefinite period of time." (*See, e.g.*, Valuex

Research Ex. 11, ¶ 5(a).)

33.   On May 16, 2022, Mr. Ross sent an email to Ms. Johansson stating ". . . my group

has elected to allow the notes to mature and not convert. . . . "  summarizing the balances of the

notes entered into with the Investor Group.  In addition, the email stated, among other things, "I

would like to discuss with you the maturity payment for Eric and Francine Ross alone.  I am

willing to take the $7,500 (Nov[.] 17) plus accrued interest and the $2,500 (July 2018) plus

accrued interest in cash due immediately."  (Investor Group Ex. 6.) [3]

34.   On May 26, 2022, Ms. Johansson replied to Mr. Ross's email and stated,"[a]s

discussed in the call last week and to reiterate the Company is in a process of securing capital

and will not be able to repay any matured CPNs (including interest) until the funding round is

completed.  This would also be applicable to you and Francine's Notes."  (Investor Group Ex. 6.)

35.   On June 15, 2022, Mr. Ross emailed Ms. Johansson and asked "My investor group

would like to know if they can expect to have their investments in the CPNs dated Nov[.] 2017

and July 2018 to be repaid?  I share their concern so I hope you can set my mind at ease with real

answers."  (Investor Group Ex. 7.)

36.   On June 24, 2022, Ms. Johansson responded to Mr. Ross's email stating, "[a]s

discussed in our last call on May 16th and to reiterate the Company is in a process of securing

capital and will not be able to repay any matured CPNs (including interest) until the funding

---

[3] All exhibits admitted into evidence during the trial by Attorney D'Agostino on behalf of the
Investor Group creditors will hereinafter be referred to as "Investor Group Ex. __."

round is completed.  I will keep you posted and let you know as soon as the capital is secured."
(Investor Group Ex. 7.)

37.  On December 8, 2022, Mr. Ross learned that a new company named Valuex Fintech,
LLC had been formed.  He believed, based upon its website and "a whole bunch of other things"
that "all the things were identical to Valuex Research."  (ECF No. 52, at 12:18:16–12:18:45
p.m.)

38.  On December 9, 2022, Mr. Ross left a voicemail message for Ms. Johansson stating
he planned to ". . . treat you with the same disrespect that you are entitled to, including
notification to several authorities including courts, which will in all likelihood result in some
incredibly unexpected outcomes to you."  (Valuex Research Ex. 2.)

39.  On December 19, 2022, Mr. Ross sent an email to Ms. Johansson stating he would
file ". . . the Form 205 Involuntary Bankruptcy petition as planned not one day later than
December 22, 2022."  He further stated, "[i]n the alternative, you may issue full notes payable to
all parties in my group for full value plus accrued interest at 12% signed personally by you and
Peter [Johansson] and adding Valuex Fintech LLC with joint and several liability."  (Valuex
Research Ex. 3.)

40.  On December 21, 2022, Ms. Johansson responded to Mr. Ross's email, stating: "The
offer, previously given to you as a representative for your group, to extend your respective
CPN/s still stands.  This offer was previously given to you and your group since the company
was (and currently still is) unable to make any repayments.  If accepted by you and your group of
investors consideration will be made not to dissolve the company."  (Ross Ex. 6.)

41.  Mr. Ross believes that Valuex Research and Ms. Johansson may be running a Ponzi
scheme and that Ms. Johansson probably committed bankruptcy crimes.  He also found her

behavior reprehensible and despicable. "She was a good friend of mine. And then she treated me with a . . . with disrespectful . . . disrespectfully, so I was a little upset with the manner in which she behaved." (ECF No. 52, at 12:41:02–12:43:09 p.m., 12:44:58–12:45:31 p.m.)

42.   On May 2, 2023, an initial hearing was held on the Motion to Dismiss. Mr. Ross, and the Investor Group through Attorney D'Agostino, conceded that they did not have claims against Valuex Fintech LLC, Valuex LLC, or Valuex, Inc., and only had claims against Valuex Research. Mr. Ross, and the Investor Group through Attorney D'Agostino, agreed that Valuex Fintech LLC, Valuex LLC, or Valuex, Inc. entities be removed as involuntary debtors. (ECF No. 29, at 1:16:04–1:17:05 p.m.)

## V.    CONCLUSIONS OF LAW

"Involuntary bankruptcy is an extreme remedy with dire consequences upon [an alleged debtor]." *In re Anmuth Holdings, LLC*, 600 B.R. 188 (Bankr. E.D.N.Y. 2019) (alteration in original) (citing *In re Brooklyn Rs. Recovery, Inc.,* 216 B.R. 470 486 (Bankr. E.D.N.Y. 1997). Accordingly, courts have developed a requirement of good faith in filing an involuntary petition. *See* 2 COLLIER ON BANKRUPTCY ¶ 303.16[1] (16th ed. 2023). Nevertheless, "[t]here is a presumption in favor of good faith filings, and the burden is on the debtor to show by a preponderance of the evidence that the filing is in bad faith." *Id*.

The Motion to Dismiss seeks to dismiss the Involuntary Petition as a bad faith filing under 11 U.S.C. § 303. Valuex Research, Mr. Ross, and the Investor Group all cite to the "totality of circumstances" test in support of their respective arguments regarding the Motion to

Dismiss. [4]  Although the United States Supreme Court and the United States Court of Appeals for the Second Circuit have not addressed the issue of whether an involuntary petition can be dismissed for bad faith under section 303, the United States Court of Appeal for the Third Circuit directly addressed the issue in the involuntary chapter 7 case of *Forever Green Athletic Fields, Inc.,* 804 F.3d 328 (3d Cir. 2015)*.*

In *Forever Green*, the Third Circuit held that bad faith provides an independent basis for dismissing an involuntary petition.  *Id*. at 330.  In reaching its conclusion, the Court thoroughly reviewed the language of section 303.  It noted that section 303 contains only one reference to bad faith, which appears in section 303(i)(2).  *Id.* at 333.  The Court then explained that because the only mention of bad faith is in section 303(i)(2) (the section addressing post-dismissal damages), much of the case law on bad faith in involuntary cases centers on that provision.  *Id*. The Court further explained that in a typical involuntary case, if the petitioning creditors do not meet the statutory requirements for filing an involuntary petition, the case is then dismissed, and following dismissal, the involuntary debtor seeks damages under section 303(i)(2) arguing the involuntary petition was filed in bad faith.  *Id*.

Bankruptcy courts within the Second Circuit have applied the totality of circumstances test to a claim of bad faith, but only *after* the case was dismissed for other reasons and, as noted in *Forever Green*, only to determine post-dismissal damages under 11 U.S.C. § 303(i).  *See Anmuth Holdings*, 600 B.R. 168 (Bankr. E.D.N.Y. 2019) (finding an involuntary petition filed as

---

[4] The United States Court of Appeals for the Second Circuit has discussed, but not adopted, a specific test under section 303 to determine if an involuntary petition was filed in bad faith.  *See Lebow Machine Co., Inc. et al. v. Bayshore Wire Products Corp. (In re Bayshore Wire Products Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000), *but see In re Murray*, 543 B.R. 484, 488 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53, 60 (2d Cir. 2018). (affirming the dismissal of an involuntary petition for cause under section 707(a) because petitioning creditor improperly used the Bankruptcy Code as a judgment enforcement device.).

a litigation tactic or litigation strategy was filed in bad faith and applying timing of the filing as a factor in determining bad faith.); *see also In re CNG Foods, LLC,* 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020).

As was true in *Forever Green*, Valuex Research is not arguing the Involuntary Petition should be dismissed because the petitioning creditors failed to meet the statutory requirements; it is arguing that bad faith may serve as an additional basis for dismissal of the Involuntary Petition even when the statutory criteria have been met.[5] *Id.* In support of its argument, Valuex Research asserts that the Court should apply the "totality of the circumstances" test adopted in *Forever Green* and dismiss the Involuntary Petition as a bad faith filing. *Id*. at 336.

Although *Forever Green* adopted the totality of circumstances test in dismissing an involuntary petition as a bad faith filing, the Third Circuit also emphasized that it has repeatedly held a voluntary petition may be dismissed for bad faith under the provisions of the Bankruptcy Code that permit dismissal for "cause." *Id.* at 333. Because an involuntary petition may be commenced only under chapter 7 or 11 of the Bankruptcy Code, *see* 11 U.S.C. § 303(a), and because as *Forever Green* correctly notes bad faith only appears in the post-dismissal damages provision of section 303(i)(2), the Court is persuaded that it should look to the dismissal provisions in chapter 7 as the controlling basis to grant or deny the Motion to Dismiss.

The dismissal provisions that apply in a chapter 7 case appear in section 707(a). The plain language of section 707(a) does not limit its application only to voluntary cases. In fact,

---

[5] Valuex Research raised issues about the signatures on the Involuntary Petition, specifically that it is invalid under Federal Rule of Bankruptcy Procedure 9011(a) because Mr. Ross's signed his name and all of the other petitioning creditors' names on the Involuntary Petition. (ECF No. 52, at 11:04:55–11:06:05 a.m.) However, Valuex Research is not contesting the statutory basis for filing the Involuntary Petition under 11 U.S.C. § 303(b). (ECF No. 52, at 10:46:44–10:47:13 a.m.)

the Second Circuit has held that section 707(a) applies to involuntary and voluntary petitions. *Murray*, 900 F.3d at 60.

Dismissal under section 707(a) must be for "cause." *Id.* Prior to being affirmed by the Second Circuit, the United States Bankruptcy Court for the Southern District of New York stated "Many Courts, including this one, have recognized that cause for dismissal . . . may result from circumstances not specifically mentioned in the Code – whether for bad faith or circumstances falling short of bad faith but nevertheless representing an inappropriate use of the Code." *In re Murray*, 543 B.R. 484, 489–490 (Bankr. S.D.N.Y. 2016) *aff'd* , 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) (applying the dismissal provision in section 707(a) and rules of construction set forth in section 102(3) to an involuntary chapter 7 petition); *see also Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 63 n. 5 (9th Cir. BAP 2011) (Markell, Dissenting) (". . . Section 1112(b) applies [dismissal provision of chapter 11] to this involuntary chapter 11 proceeding.  That section requires 'cause' in order to dismiss, and it is beyond cavil that a lack of good faith in filing can constitute such cause.") (internal citations omitted).  For these reasons, and in accordance with the Second Circuit decision in *Murray*, the Court concludes that the Motion to Dismiss should be decided under section 707(a) and not section 303.  Therefore, the Court must determine if cause exists to dismiss the Involuntary Petition.

### Cause for dismissal under section 707(a).

"Cause is a fact-specific inquiry as to which a variety of factors may be relevant, including the purpose for which the petition was filed, and whether state proceedings protect the parties' interests." *Murray*, 900 F.3d at 60.  Inappropriate use of the Bankruptcy Code may establish cause to dismiss under 11 U.S.C. § 707(a).  *Id.* (citing *Forever Green*, 804 F. 3d at 336; *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 & n. 11 (4th Cir.

14

1993)).  Furthermore, if the Bankruptcy Code is misused ". . . such misuse is one of a number of factors supporting cause to dismiss." *Murray*, 900 F.3d at 60 (citing *In re Head*, 223 B.R. 648, 653–54 (Bankr. W.D.N.Y. 1998)).

In *Murray*, the Second Circuit held cause existed to dismiss an involuntary petition under section 707(a) because the filing of the involuntary petition was an inappropriate use of the Bankruptcy Code.  *Id*.  In reaching its decision, the Court determined that it did not need to classify misuse of the Bankruptcy Code as bad faith to dismiss the involuntary petition under section 707(a). *Id.*  ("We need not . . . classify misuse of the Bankruptcy Code as bad faith in order to accept it as cause to dismiss, particularly when, as here, misuse is one of a number of factors supporting cause to dismiss.").

A number of factors exist in this case to dismiss the Involuntary Petition for cause.  Mr. Ross's filing of the Involuntary Petition was an inappropriate use of the Bankruptcy Code because it was used to intimidate Valuex Research.  In addition, the filing of the Involuntary Petition was as a "litigation tactic."  Furthermore, the dispute between Mr. Ross and Valuex Research could be properly resolved in the state courts.  *See Murray*, 900 F.3d at 63.  Each of these reasons alone constitutes cause to dismiss the Involuntary Petition under section 707(a).

**The threat of filing the Involuntary Petition was used to intimidate Valuex Research.**

In *Murray*, the Second Circuit affirmed the Bankruptcy Court's decision dismissing an involuntary petition for cause after determining that the conduct of a creditor was inappropriate conduct, as opposed to the more common scenario where cause for dismissal exists due to the conduct of the debtor.  *Murray*, 543 B.R. at 497, *aff'd*, 565 B.R. 527, *aff'd*, 900 F.3d at 60.  As noted above, involuntary bankruptcy petitions have "serious consequences [for] the alleged debtor, such as loss of credit standing, inability to transfer assets and inability to carry on

15

business affairs, and public embarrassment." *Murray*, 900 F.3d at 59 (alterations in original)

(citing *Forever Green,* 804 F.3d at 335) (quoting *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985)).

Because of these serious consequences, "[c]ourts should be wary of creditors who may find

alluring the 'retributive quality' of thrusting a debtor into bankruptcy." *Forever Green,* 804 F.3d

at 335 (citing *Reid*, 773 F.2d at 946).

 "In deciding whether a petition is motivated by ill will or malice, courts evaluate the

actions of the petitioning creditor before and after filing." *In re Anmuth Holdings LLC*, 600 B.R.

168 (Bankr. E.D.N.Y. 2019) (citing *In re Advance Press & Litho*, 46 B.R. 700, 704 (Bankr. D.

Colo. 1984)).  The court in *Anmuth Holdings* based its finding of bad faith on threatening

messages the petitioning creditor sent before and after filing and on the petitioning creditor's

testimony.  *See* 600 B.R. at 195–96 (finding that the petitioning creditor's text messages

demonstrated that the petitioning creditor "appreciated, yet disregarded, the serious

consequences an involuntary petition inflicts on the alleged debtor.").  Similarly, in *Advance

Press & Litho*, the bankruptcy court considered both the petitioning creditor's actions

immediately preceding filing the petition and the petitioning creditor's hostility exhibited during

the proceeding.  46 B.R. at 704–706.

 Mr. Ross's conduct before and during this case supports the conclusion that cause exists

to dismiss the Involuntary Petition.  Mr. Ross the only petitioning creditor who completed and

filed the Involuntary Petition.  Mr. Ross is also the only petitioning creditor who signed the

Involuntary Petition.  Mr. Ross is the only petitioning creditor that has appeared before the Court

in proceedings in this case, including at the trial on the Motion to Dismiss.

 Mr. Ross sought retribution against Valuex Research and its principal, Ms. Johansson,

because of perceived slights and betrayal.  *See Murray*, 900 F.3d at 61.  The evidence established

that before filing the Involuntary Petition, Mr. Ross verbally threatened Ms. Johansson.  He stated he would "treat" her with "the same disrespect that [she is] entitled to, including notification to several authorities including courts, which will in all likelihood result in some incredibly unexpected outcomes to [her]."(alterations added) (Valuex Research Ex. 2.)  This threat, coupled with his explicit threat to file an involuntary bankruptcy petition if Ms. Johansson did not agree to new terms for his CPNs, support the conclusion that the Involuntary Petition was not filed in good faith.  *See Forever Green,* 804 F.3d at 337.  Not only did Mr. Ross make these threats, he followed through with his threats by filing of the Involuntary Petition, creating "unexpected outcomes" for Valuex Research and Ms. Johansson.

When Mr. Ross filed the Involuntary Petition, he not only placed Valuex Research into an involuntary bankruptcy case, but also listed Valuex Fintech, LLC, Valuex Inc., and Valuex, LLC as aliases on the Involuntary Petition.  Mr. Ross is a CPA in both New York and Connecticut with experience in forensic accounting.  After reviewing the Connecticut Secretary of State corporate records, he knew or should have known that Valuex Fintech, LLC, Valuex Inc., and Valuex, LLC are separate corporate entities, not aliases of Valuex Research.

Mr. Ross considered Ms. Johansson to be a "close friend" at the time he invested in Valuex Research, but testified their relationship deteriorated over time and that he was angry at Ms. Johansson for her behavior toward him.  Mr. Ross further testified that he believes Ms. Johansson was running a Ponzi scheme and that she may be guilty of bankruptcy crimes.  During his testimony, he again confirmed his belief that her behavior was reprehensible and despicable and tensely claimed he was "a little upset" with her behavior and he hoped she would be investigated.

Such testimony, combined with the fact that he (i) prepared the Involuntary Petition; and (ii) signed it on behalf of all of the other petitioning creditors *including one individual who was not a creditor of Valuex Research*, supports the conclusion that Mr. Ross inappropriately used the Bankruptcy Code. By filing the Involuntary Petition, Mr. Ross sought to obtain "incredibly unexpected outcomes" against Valuex Research as punishment and retribution for perceived disrespect and to address his anger, embarrassment, and frustration. Therefore, cause exists to dismiss the Involuntary Petition under 11 U.S.C. § 707(a). *Murray*, 900 F.3d at 60; *see also In re Forever Green*, 804 F.3d at 335.

### The Involuntary Petition was used as a litigation tactic.

Cause also exists to dismiss the Involuntary Petition because Mr. Ross used the Involuntary Petition as a litigation tactic. *See Murray*, 900 F.3d at 63. The bankruptcy court does not exist to serve as a "rented battlefield" or "collection agency," and such inappropriate use of the Bankruptcy Code is cause to dismiss the Involuntary Petition under section 707(a). *Id.* Furthermore, "[t]o use an involuntary filing as a tactic to 'work it out' with one's alleged obligor is an abuse of the bankruptcy process . . .." *In re Grossinger*, 268 B.R. 386 (Bankr. S.D.N.Y. 2001) (sanctioning both the petitioning creditor and his bankruptcy attorney for filing a bad faith involuntary petition).

Many courts have held that it is improper for creditors to use the bankruptcy court as a debt-collection device. *See Murray*, 900 F.3d at 62–63; *see also Forever Green*, 801 F.3d at 337–338 (citing *In re Nordbrock*, 772 F.2d 397, 400 (9th Cir. 1985); *In re Tichy Elec. Co.*, 332 B.R. 364, 374 (8th Cir. BAP 2005); *In re Lilly*, 91 F.3d 491, 496 (3d Cir. 1996)). In *Forever Green*, the Third Circuit upheld a dismissal of an involuntary petition where the petitioning creditor's "threatening comments," coupled with "suspicious timing" of the filing, suggested the

petitioning creditor was "just using bankruptcy as an alternative weapon" and as a litigation strategy. *See* 804 F.3d at 337.

Mr. Ross used the threat of filing an involuntary bankruptcy petition as leverage to re-negotiate the terms of his CPN. He demanded that Ms. Johansson "issue full notes payable to all parties in my group for full value plus accrued interest at 12% signed personally by you and Peter [Johansson] and adding Valuex Fintech LLC with joint and several liability." Significantly, Mr. Ross admitted the purpose of threatening to file the Involuntary Petition was to obtain terms and conditions otherwise not available to him. Mr. Ross also admitted that if Ms. Johansson had agreed to his demands, he would not have filed the Involuntary Petition, even though he had accused Valuex Research of operating a Ponzi scheme and of defrauding people.

The filing of the Involuntary Petition was used as a litigation tactic and an improper alternative to customary debt-collection procedures. *Murray*, 900 F.3d at 63; *Forever Green*, 804 3d at 33; *see also Nordbrock*, 772 F.2d at 400; *In re Blaine Richard & Co., Inc.*, 16 B.R. 362 (Bankr. E.D.N.Y. 1982) (denying summary judgment where a petitioning creditor did not establish exceptional circumstances justifying recourse to the bankruptcy court.). Mr. Ross's misuse of the Bankruptcy Code is cause to grant the Motion to Dismiss under 707(a). *Murray*, 900 F.3d 59–60.

**The dispute could be properly resolved in the state courts.**

Cause also exists to dismiss an involuntary petition where disputes could be properly resolved in the state courts. *Murray*, 900 F.3d at 63. Where adequate remedies exist in state courts, it is in the interest of the bankruptcy system and in the public interest to prevent parties from exploiting the bankruptcy system through the misuse of an involuntary petition. *Id*.

With respect to filing an involuntary petition, "'Such a remedy exists as an avenue of relief for the benefit of the overall creditor body . . . [It] was not intended to redress special grievances, no matter how legitimate, of particular creditors . . . [Such creditors] must seek redress under state law, in the state courts[,] and not in the bankruptcy court.'" *Murray*, 900 F.3d at 59  (alterations in original) (quoting *In re Brooklyn Res. Recovery, Inc.,* 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997)).  Furthermore, an involuntary bankruptcy case is not the first step in collecting on a fully matured debt and should not be used as a bargaining strategy with a debtor. *Murray*, 900 F.3d at 63; *See also In re Nordbrock*, 772 F.2d at 400 ("A creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt.").

Adequate legal remedies exist outside of bankruptcy for Mr. Ross and the petitioning creditors to collect their debts.  Mr. Ross and the petitioning creditors have not established that their interests would be prejudiced by dismissal.  The evidence established that Mr. Ross did not seek appropriate remedies under state law at any time before filing the Involuntary Petition.  At the time he filed the Involuntary Petition, Mr. Ross was aware that Mr. Fisher had commenced a collection action in the Connecticut Superior Court against Valuex Research.  Notably, Mr. Fisher is not a petitioning creditor.  Mr. Ross, much like Mr. Fisher, could have exercised his rights under Connecticut law to attempt to collect his debt.  *See Murray*, 900 F.3d at 62.  Instead, Mr. Ross did not exercise his state law rights and filed the Involuntary Petition after his demand for repayment of debt was not met.

There is a public interest ". . . in preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate remedies exist in state courts." *Murray*, 900 F.3d at 63.  Accordingly, the Court finds Mr. Ross and the petitioning creditors used the Involuntary Petition as substitute for customary state-court collection

procedures.  *Id.*; *see also Forever Green,* 804 F.3d at 328.  Thus, cause exists to dismiss the

Involuntary Petition under 11 U.S.C. § 707(a), for using the bankruptcy court as a "rented

battlefield," or "collection agency."  *See Murray*, 900 F.3d at 63.

## VI.    <u>CONCLUSION</u>

Applying the facts in this case to the applicable law, the Court concludes that the filing of

the Involuntary Petition was an inappropriate use of the Bankruptcy Code.  Cause exists to

dismiss the case under 11 U.S.C. § 707(a) because (i) the Involuntary Petition was used to

intimidate Valuex Research; (ii) the Involuntary Petition was used as a "litigation tactic;" and

(iii) the dispute could be properly resolved in the state courts.  *See Murray*, 900 F.3d at 63.  Each

of these reasons alone is sufficient to dismiss the Involuntary Petition under section 707(a).

*Murray*, 900 F.3d at 60 and 63.  Accordingly, it is hereby

**ORDERED:**  The Motion to Dismiss the Involuntary Petition is **GRANTED** pursuant to

11 U.S.C. § 707(a); and it is further

**ORDERED:**  The Court retains jurisdiction to consider any motion Valuex Research

may file pursuant to 11 U.S.C. § 303(i) seeking costs, reasonable attorney's fees, or damages

proximately caused by the filing of the Involuntary Petition.  Any such motion shall be filed on

or before October 6, 2023, and shall attach evidence of the costs, reasonable attorney's fees, or

damages proximately caused by the filing of the Involuntary Petition.


Dated at Bridgeport, Connecticut this 12th day of September, 2023.



Julie A. Manning
United States Bankruptcy Judge
District of Connecticut